UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST LEE COX, JR., | No. 2:22-cv-00804-WBS-EFB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| I. BAL., et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Plaintiff initiated this action on May 4, 2022 (ECF No. 1) and filed his First Amended Complaint (FAC) on October 11, 2022. ECF No. 19. After screening the FAC, this court found that plaintiff's allegations stated a potentially cognizable Eighth Amendment claim of deliberate indifference to plaintiff's serious medical needs by defendants Bal, Williams, and Patterson, three Mule Creek State Prison (MCSP) officials who, in late 2020, allegedly permitted COVID-19 infected inmates to mingle with vulnerable inmates such as plaintiff, a 60-year-old cancer patient. ECF No. 27. All other claims in the FAC were dismissed with prejudice. *Id.* Defendants have now filed a motion to dismiss on various grounds, including that plaintiff has failed to state a claim. ECF No. 43. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

1

## I. Plaintiff's Allegations

The allegations in the FAC (ECF No. 19) are as follows. In or around December 2020 and January 2021, plaintiff was housed at MCSP. *Id.* at ¶ 7. Defendant Bal was the Chief Medical Officer at MCSP; defendant Williams was the Associate Warden of Health Care; and defendant Patterson was the Chief Executive Officer overseeing healthcare. *Id.* at ¶¶ 3-5. Plaintiff was approximately 60 years old and undergoing treatment for prostate cancer and hypertension. He was also prescribed a CPAP machine. For these reasons, plaintiff was particularly susceptible to contracting COVID-19. *Id.* at ¶¶ 7-11.

Plaintiff alleges that he should have been housed in a single-occupancy cell to minimize his risk. While certain inmates with high medical risk were offered single cell housing, plaintiff was not offered a single cell, allegedly due to lack of enough individual cells to house all high-risk medical inmates. *Id.* at ¶¶ 11, 26.

As of October 2020, MCSP had many inmates with active COVID infections. *Id.* at 14. Inmates with COVID were originally housed in gyms, and when they became full, Facility E building 220, where plaintiff was housed, was designated as quarantine housing. *Id.* at 14-15. To make room for the COVID-positive inmates, plaintiff was moved to Facility D, building 16.

After inspecting Facility D and E gyms on December 24 and December 30, 2020, the Fire Marshal ordered all inmates housed therein to be relocated within MCSP. *Id.* at ¶ 17. The inmates housed in the Facility D gym were then moved to Facility D, buildings 16, 17, and 18. *Id.* at ¶19. Thirteen COVID-positive inmates were moved to building 16, where plaintiff was housed. The COVID-positive inmates shared the restrooms, showers, and phones with inmates such as plaintiff who did not have COVID; the inmates also ate together at the same time. *Id.* at ¶ 23. MCSP staff administered COVID tests twice weekly to the inmates without COVID.

Plaintiff tested positive for COVID on January 8, 2021, and he was subsequently moved to Facility E, building 20. *Id.* at ¶ 27. Plaintiff suffered from COVID for about a month, including "difficulty breathing, pain from headaches, a runny nose, loss of strength, powerful sneezing, coughing, memory and concentration loss." *Id.* at ¶ 28. Plaintiff seeks monetary damages, punitive damages, and costs.

## II. Legal Standards

### A. Motion to Dismiss

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co*., 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984). In resolving a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true (and any reasonable inference supported by the facts). *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

### B. Eighth Amendment

To succeed on an Eighth Amendment claim predicated on deliberate indifference to medical need, a plaintiff must establish that: (1) she had a serious medical need; and (2) the defendant's response to that need was deliberately indifferent. *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical

3

need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment, or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant will be liable for violating the Eighth Amendment if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

However, it is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Rather, plaintiff must show a deliberate disregard for a known medical need. The Ninth Circuit has made clear that a difference of medical opinion is, as a matter of law, insufficient to establish deliberate indifference. *Toguchi*, 391 F.3d at 1058. "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

////

////

////

### III. Analysis

#### A. Eighth Amendment

Plaintiff maintains that defendants violated his Eighth Amendment rights when they failed to re-house him in an individual cell and when they moved COVID-positive inmates into his housing unit. ECF No. 19 at 1. Plaintiff alleges that at all relevant tines, he suffered from prostate cancer and "was treated with chemotherapy affecting his immune system." *Id.* According to plaintiff, his medical conditions categorized him "as Medical High Risk score 3, mandating single cell; he has since been transferred and is now housed single cell."[1] *Id.* Defendants counter that plaintiff's FAC fails to state cognizable Eighth Amendment claims against them.

Because plaintiff's allegations concern custody and housing decisions, the court also reviews his allegations under the general Eighth Amendment standard applicable to non-medical claims. A prison official violates the Eighth Amendment prohibition against cruel and unusual punishment "only when two requirements" – one objective, one subjective – "are met." *Farmer*, 511 U.S. at 834. Under the objective prong, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* at 833, 837. "[T]here is no questions that an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus. Courts have long recognized that conditions posing an elevated chance of exposure to an infectious disease can pose a substantial risk of serious harm." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020); *see also Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020) ("[n]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners).

Plaintiff has adequately pled an objective risk of serious harm. He has specifically alleged that his age and medical history made him particularly susceptible to contracting COVID. ECF No. 19 at ¶¶ 9-11. He alleges that he was not offered a single-occupancy cell like other high-risk individuals, and he alleges that, at a time he was negative for COVID-19, multiple COVID-

---

[1] In their reply, defendants maintain that plaintiff's allegations that he met the criteria for single cell housing were not raised in his complaint, but rather solely in plaintiff's opposition to defendants' motion to dismiss. ECF No. 47. Defendants are clearly mistaken.

positive inmates were moved to the building in which he was housed. *Id.* at ¶¶ 17-23. The COVID-positive inmates shared the restrooms, showers, and phones with inmates such as plaintiff who did not have COVID; the inmates also ate together at the same time. *Id.* at ¶ 23. Plaintiff alleges that he subsequently tested positive for COVID. *Id.* at ¶ 27. These allegations are sufficient to plead an objective risk of serious harm. *See, e.g.*, *Fields v. Sec'y of CDCR*, 2022 WL 2181997, at *6 (E.D. Cal. June 16, 2022) (holding that plaintiff who alleged he was housed with COVID-19 positive inmates and subsequently tested positive for COVID-19 had sufficiently pled an objective risk of substantial harm); *Jones v. Sherman*, 2022 WL 783452, *at 7 (E.D. Cal. Mar. 11, 2022), *report and recommendation adopted*, 2022 WL 4238875 (E.D. Cal. Sept. 13, 2022) (finding that "many courts have found that COVID-19 poses a substantial risk of serious harm, satisfying the objective prong").

To satisfy the subjective prong of the deliberate indifference standard, a plaintiff must show that a prison official "knows that inmates face a substantial risk of serious harm and disregard[s] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 825. Deliberate indifference "is shown adequately when a prison official is aware of the facts from which an inference could be drawn about the outstanding risk, and the facts permit us to infer that the prison official in fact drew that inference, but then consciously avoided taking appropriate action." *Disability Rts. Mont., Inc. v. Batista*, 930 F.3d 1090, 1101 (9th Cir. 2019). Defendants can be found to be subjectively aware of a risk by the fact that the risk was obvious. *Farmer*, 511 U.S. at 842.

Defendants argue that plaintiff has failed to meet the subjective prong as to any defendant. Specifically, defendants maintain that the FAC does not allege facts showing that defendants were aware that placing COVID-19 positive inmates in the common spaces would cause an excessive risk of harm to plaintiff. Defendants also argue that plaintiff's allegations against defendants are too generalized to state a claim. According to defendants, "[p]laintiff's expectation that CDCR perform perfectly when faced with a pandemic is not the appropriate standard when determining if a defendant acted with deliberate indifference." ECF No. 43-1 at 9.

////

      Plaintiff does not, however, allege that CDCR was expected to "perform perfectly." Indeed, plaintiff does not allege that defendants "simply failed to prevent the spread of the virus or achieve measures not possible in a correctional setting; [he alleges] that they actively and knowingly made specific affirmative decisions that created greater risk that plaintiff[] would contract COVID." *In re CIM-SQ Transfer Cases*, 2022 WL 2789808, at *10, n. 14 (N.D. Cal. July 15, 2022) (denying defendants' motions to dismiss for failure to state a claim). Here, plaintiff has "plausibly alleged that each of the defendants . . . participated, as supervisor or otherwise, in one or more of the decisions to transfer prisoners, regarding the process for transferring prisoners, and regarding the housing of prisoners after the transfer, in a manner that exposed plaintiff[] to heightened risk of contracting COVID-19. These alleged actions are sufficient to constitute unconstitutional conduct." *Id.* at * 7; *see also Hernandez v. Covello*, 2024 WL 643874, at *4 (E.D. Cal. Feb 15, 2024) (denying defendant's motion to dismiss where plaintiff adequately alleged that he was at high risk for contracting COVID-19 due to his medical history, and he was not moved to single-cell housing).

      Here, plaintiff alleges that all defendants knew the risk of COVID-19, knew that MCSP had many medically high-risk inmates, had the authority to initiate inmate transfers, and instituted policies that increased plaintiff's risk of contracting COVID-19 by transferring COVID-19 positive inmates into the building in which he was housed. ECF No. 19. For example, plaintiff specifically alleges that all defendants were notified:

> by the Fire Marshal and his report that all of the COVID-19 infected inmates housed in D and E facility gyms were being ordered moved from the gyms. The defendants had the responsibility to house the 200 COVID-19 infected inmates adequately by keeping them separate from inmates who had tested negative for COVID-19; however, the video footage of December 24, 2020 and December 30, 2020 will show that defendants ordered and allowed the 200 COVID-19 infected inmates to be housed in the same Pod with plaintiff and 60 other inmates who had tested negative for COVID-19.

*Id.* at ¶ 29. Plaintiff also alleges that defendants identified multiple inmates who were at high risk if they contracted COVID-19. *Id.* at ¶ 11. As such, and contrary to defendants' arguments, "Plaintiff provided more than generalized factual allegations in his complaint, Plaintiff linked Defendants' actions (or inactions) to the alleged deprivation, Plaintiff alleged that Defendants did

7

1   not respond reasonably, [and] Plaintiff alleged that he caught COVID-19." *Jones*, 2022 WL
2   783452 at *8.
3       Defendants appear to argue that if prison officials have taken *any* steps to mitigate the
4   spread of COVID-19, they cannot be found to have been deliberately indifferent. ECF No. 47 at
5   pp. 3-4. Defendants are incorrect for multiple reasons. To begin with, if defendants were correct,
6   no plaintiff could ever adequately plead an Eighth Amendment violation based on prison
7   officials' actions regarding COVID-19, so long as there was *some* mitigation policy in place at
8   the institution. This would be an absurd result, and as the discussion *supra* demonstrates, more
9   than one district court in this Circuit has already found that it is possible for plaintiffs to
10  adequately plead an Eighth Amendment violation based on COVID-19 mitigation efforts or lack
11  thereof.
12      Moreover, the cases cited by defendants in support of their argument involve significantly
13  different factual situations than the one at bar. For example, defendants cite *Barnett v. Gastelo*,
14  2022 WL 4292344, at *5 (C.D. Cal. Aug 22, 2022) as support for their proposition that any
15  efforts on behalf of prison officials to respond to COVID-19 prevents a finding of deliberate
16  indifference. ECF No. 47. In *Barnett*, however, the plaintiff generally alleged that "the only
17  reasonable step[] to abate the spread [of COVID-19] was to depopulate the inmate population"
18  and that his eight person dorm cohort was not adequate. *Barnett*, 2022 WL 4292344, at *1.
19  Plaintiff here, on the other hand, has specifically pled that, regardless of MCSP's policies to abate
20  COVID-19, it was deliberate indifference for prison officials to move COVID-19 positive
21  inmates into plaintiff's housing, given his documented health conditions. ECF No. 19. Notably,
22  the *Barnett* court, although it found that the plaintiff had not properly pled an Eighth Amendment
23  violation, confirmed that when examining whether a prison official subjectively acted with
24  deliberate indifference to the risk of COVID-19, courts should consider whether the official
25  "'responded reasonably to the risk.'" *Id.* at *4 (citing *Benitez*, 2021 WL 407960, at *5). Plaintiff
26  here has adequately pled that defendants acted unreasonably by "disregard[ing] a known risk" *i.e.*
27  the risk of moving COVID-19 positive inmates into plaintiff's housing, when plaintiff was
28  COVID-19 negative and suffered from health issues. Therefore, plaintiff has sufficiently alleged

8

facts to satisfy the subjective requirement.

Defendants also argue that plaintiff has not adequately pled supervisory liability. ECF No. 43-1. To properly plead supervisory liability, a plaintiff must allege facts indicating that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotations and citations omitted). According to defendants, plaintiff's allegations against defendants are vague and conclusory, and too speculative to properly allege that defendants were involved with the decision to house COVID-19 positive inmates in plaintiff's housing unit, and have them share facilities such as bathrooms and dining halls. Defendants are incorrect.

Supervisory liability may be established by allegations that defendants either "set[] in motion a series of acts by others," or "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca,* 652 F.3d 1202, 1207-08 (9th Cir. 2011) (internal citations and quotation marks omitted). Plaintiff has specifically alleged that "defendants were warned that plaintiff is a high risk medical patient" (ECF No. 19 at p. 11); that Bal, Williams, and Patterson were notified that the COVID-19 positive inmates were ordered moved by the Fire Marshal; and that they subsequently ordered the COVID-19 positive inmates moved into housing with non-positive inmates. *Id.* at ¶¶ 19, 29. Assuming plaintiff's factual allegations are true, and taking them in the light most favorable to plaintiff, these allegations adequately plead the requisite causal connection under *Starr*. Therefore, plaintiff has alleged facts sufficient to support a supervisory liability claim against defendants.

### B. Eleventh Amendment

Plaintiff has sued defendants in both their individual and official capacities. ECF No. 19 at ¶ 6. Defendants maintain that plaintiff's claims against defendants in their official capacities must be dismissed because plaintiff is seeking solely monetary damages, and such claims are

1    barred by the Eleventh Amendment.

2          Claims for damages against the state, its agencies, or its officers for actions performed in
3    their official capacities are barred under the Eleventh Amendment, unless the state waives its
4    immunity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Section 1983 does not abrogate the
5    states' Eleventh Amendment immunity from suit. *See Quern v. Jordan*, 440 U.S. 332, 344-45
6    (1979); *see also Hafer v. Melo*, 502 U.S. 21, 30 (1991) (clarifying that the Eleventh Amendment
7    does not bar suits against state officials sued in their individual capacities, nor does it bar suits for
8    prospective injunctive relief against state officials sued in their official capacities). Accordingly,
9    plaintiff's claims for monetary damages against defendants in their official capacities are barred
10   by the Eleventh Amendment and must be dismissed.

11                         **C. Qualified Immunity**

12         Finally, defendants argue that they are entitled to qualified immunity. Qualified immunity
13   protects government officials from civil liability where "their conduct does not violate clearly
14   established statutory or constitutional rights of which a reasonable person would have known."
15   *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations omitted). A defendant is entitled to
16   qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a
17   statutory or constitutional right, and (2) that the right was "clearly established" at the time of the
18   challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "Qualified immunity gives
19   government officials breathing room to make reasonable but mistaken judgments about open
20   legal questions." *Id.* at 743.

21         Plaintiff has adequately pled an Eighth Amendment claim, for the reasons described
22   *supra*; therefore, the first prong is met. Thus, the question is whether the right in question was
23   clearly established in December 2020, at the time of the key allegations in plaintiff's complaint.
24   To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable
25   official would understand that what [the official] is doing violates that right." *Anderson v.*
26   *Creighton*, 483 U.S. 635, 640 (1987). This does not mean, however, that "official action is
27   protected by qualified immunity unless the very action in question has previously been held
28   unlawful, but it is to say that in light of the pre-existing law the unlawfulness must be apparent."

*Id.*

Defendants argue that it was not clearly established in December 2020 either that high-risk inmates should be housed in individual cells or that inmates with active COVID-19 infections should not be moved into a building (with shared restrooms, showers, phones, and dining facilities) housing COVID-19 negative prisoners. The Supreme Court, however, has long established the right of prisoners to protection from heightened exposure to serious communicable diseases. *See, e.g., Helling v. McKinney*, 509 U.S. 25, 33 (1993) (holding that the Eighth Amendment prevents prison officials from being "deliberately indifferent to the exposure of inmates to a serious, communicable disease"). "For purposes of qualified immunity, that legal duty need not be litigated and then established disease by disease or injury by injury." *Estate of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017). COVID-19 is such a serious communicable disease.

Accordingly, multiple courts in this Circuit have concluded that "the law is clearly established that individuals in government custody have a constitutional right to be protected against a heightened exposure to serious, easily communicable diseases, and . . . this clearly established right extends to protection from COVID-19." *Maney v. Brown*, 2020 WL 7364977, at *6 (D. Ore. Dec. 15, 2020) (denying defendants' request for qualified immunity); *Jones*, 2022 WL 783452 at *12 (finding defendants were not entitled to qualified immunity against plaintiff's Eighth Amendment claim that prison officials did not adequately protect inmates from COVID-19 infection); *Hernandez v. Covello*, 2024 WL 643874, at *5 (E.D. Cal. Feb. 15, 2024) (denying defendant's motion for qualified immunity because inmates' clearly established right to be protected from serious, communicable diseases extends to protection from COVID-19). Because plaintiff has adequately pled facts showing a clearly established right, defendants' motion for qualified immunity should be denied.

### IV. Recommendation

For the foregoing reasons, it is RECOMMENDED that:

1. Defendants' motion to dismiss be GRANTED in part and DENIED in part as follows:

     a. Defendants' motion to dismiss plaintiff's complaint for failure to state a claim be DENIED;

     b. Defendants' motion for qualified immunity be DENIED;

     c. Defendants' motion to dismiss plaintiff's claims for monetary damages against defendants in their official capacities be GRANTED;

     d. Defendants' request for dismissal of this action to be declared a strike under 28 U.S.C. § 1915(G) be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 23, 2024

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

12